**Affirmed in Part and Reversed and Remanded in Part and Opinion filed August 30, 2012.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-11-00078-CR

---

### CODIEM RENOIR WOOTEN, Appellant,

### V.

### THE STATE OF TEXAS, Appellee.

**On Appeal from the 176th District Court
Harris County
Trial Court Cause No. 1235841**

## OPINION

Appellant Codiem Renoir Wooten appeals his jury conviction for murder on two grounds: (1) the State's questions during cross examination amounted to an admission of irrelevant hearsay about prior bad acts and (2) the trial court erred during the punishment phase by refusing to instruct the jury on sudden passion. We affirm appellant's conviction and reverse and remand for a new punishment hearing.

I

On the night of August 30, 2009, Kwasi Johnson and a friend were passing time at a strip club. While there, Brandi Cleveland approached Johnson and offered to perform

sexual acts for a set price. Johnson agreed and later picked up Cleveland at a house somewhere in Harris County. After bringing Cleveland to his apartment complex, Johnson tried to negotiate a lower price. Cleveland declined and asked Johnson to take her home. In the car, Cleveland called Wooten, her pimp, to inform him that the proposed transaction did not go through.

Wooten was outside waiting when Johnson and Cleveland arrived. Cleveland got out of Johnson's SUV, leaving the passenger door open. Wooten testified that he approached the open door desiring to discuss with Johnson "why the date went wrong." He could see that Johnson was armed, and Wooten had a gun in the back of his pants. As the discussion progressed, Wooten testified that Johnson's businesslike demeanor changed so that he heard "frustration in his voice, a little bit of anger," a "heightened tone," and an "aggressiveness as he spoke." Wooten said at that point he "felt threatened." "I was in my own yard," he testified, and "[t]his man was at my house with a weapon dealing with my female."

Wooten testified he then said to Johnson, "You've been gone over an hour with my girl. This is how we eat, this how we live, this is how we survive, she's been gone over an hour, can you give her something for her time." Johnson's response, according to Wooten, was "fuck you, fuck that bitch, everything you stand for, I'll kill you." At that point, both men reached for their weapons. Wooten testified that Johnson fired first, "and as I'm reaching for my gun, that's when I get hit." After he felt the bullet strike him, Wooten said he immediately started to "let [his] shots off, trying to back away at the same time." When asked if he remembered how many shots he fired, Wooten replied, "No, sir. I was panic, panic mode" and "firing wildly." When asked why he reached for his gun, Wooten responded, "Because I felt threatened for my life, sir. I felt it was self-defense. I felt I was righteous."

Cleveland testified she was paying little attention to the argument, but saw a flash inside Johnson's car when the shooting began. Johnson sped off after the shooting, and

2

police later found his SUV nearby with his dead body inside. He had been killed by a gunshot wound to the heart. Wooten was also hit, and he spent nearly a month in a hospital recovering.

After conceding that he lied to police in his initial interview, Wooten testified that he lied only because he had never dealt with police before: "I've never been in this situation. I've never been in any trouble whatsoever, so I don't know how to handle this situation. I didn't have counsel to lead me for the questions, so I denied everything." In response, the State gave notice of its intent to question Wooten regarding several extraneous offenses which had caused him to come into contact with police. The court allowed that line of questioning, noting that Wooten's comment had "more than opened the door." Afterwards, the following exchange occurred concerning Chelsie Griffin, the mother of one of Wooten's children:

> Q.    Okay. The police got called out to [the address where Wooten shot Johnson] on February 12, 2009, did they not?
> A.    February 12, 2009—for [Chelsie] Griffin?
> Q.    Yes, sir.
> A.    Uh, I don't believe that's true.
> Q.    Are you telling me that the police report I have in my hand is not true?
> . . .
> Q.    And if [Griffin] described you as violent, suicidal, and uses drugs, would she be telling the truth?

Neither the police report nor any statement made by Griffin was offered into evidence. The jury ultimately rejected Wooten's assertions of self-defense and found him guilty of murder.

Before the punishment phase of the trial, Wooten requested a sudden-passion instruction from the court:

> [Counsel]:    We would argue that the evidence, there is evidence in the record that supports such a charge, specifically that Mr. Wooten in his testimony stated that once the shooting began that he was overwhelmed by emotions of fear.

3

[The court]: Once *his* shooting began?

[Counsel]: Once the shooting began, that he was overwhelmed by emotions of fear, disorientation, confusion, et cetera. And, your Honor, I would argue that this would substantiate the charge.

(emphasis added). The court refused Wooten's requested charge, and the jury sentenced Wooten to 60 years in prison. This appeal followed.

II

A

In his first issue, Wooten complains that the trial court erred in admitting irrelevant hearsay about extraneous bad acts. We review the trial court's denial or admission of evidence using an abuse-of-discretion standard. *Apolinar v. State*, 155 S.W.3d 184, 186 (Tex. Crim. App. 2005); *Nickerson v. State*, 312 S.W.3d 250, 255 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd). Though a trial court has substantial discretion, it can abuse its discretion if its rulings are outside that zone within which reasonable persons might disagree. *Nickerson*, 312 S.W.3d at 255; *see Apolinar*, 155 S.W.3d at 186. A trial court's ruling on the admissibility of evidence will be upheld if the record reasonably supports the ruling. *Brito Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005).

Generally, evidence of extraneous offenses may not be used against the accused in a criminal trial. *Daggett v. State*, 187 S.W.3d 444, 450 (Tex. Crim. App. 2005). This does not mean, however, that such evidence will always be inadmissible. *Id.* at 451; *see Hudson v. State*, 112 S.W.3d 794, 801 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd). If a defendant testifies to a blanket statement of good conduct or character—*e.g.,* "I would never have sex with a minor"—he may "open the door" by leaving a false impression with the jury about a relevant act or character trait. *Daggett*, 187 S.W.3d at 452. Evidence of an extraneous act that tends to rebut such testimony may be admissible to impeach the defendant. *Id.* These standards notwithstanding, neither remarks by

4

counsel nor questions put to a witness are evidence. *Wells v. State*, 730 S.W.2d 782, 786 (Tex. App.—Dallas 1987, pet. ref'd); *see Madden v. State*, 242 S.W.3d 504, 513 (Tex. Crim. App. 2007).

At trial and on appeal, Wooten's complaints are centered on the State's questions regarding Chelsie Griffin. Assuming that Wooten timely objected, we can find no error in the trial court's handling of the relevant cross-examination. Initially, we note that the State's questions did not constitute evidence, and thus the trial court could not err by "admitting" them. *See Wells*, 730 S.W.2d at 786. Further, the State was justified in pursuing its chosen line of questioning. Insofar as the State made reference to a police report, Wooten himself "opened the door" when he testified that he had "never been in any trouble whatsoever." *See Daggett*, 187 S.W.3d at 452. Likewise, Wooten's self-defense theory ensured the State was justified in asking whether "violent, suicidal, and uses drugs" accurately described him. *See, e.g., Hudson*, 112 S.W.3d at 801 ("It is well-settled that extraneous[-]offense and prior[-]bad[-]acts evidence is admissible to rebut a defensive theory."). We overrule Wooten's first issue.

## B

In his second issue, Wooten complains that the trial court erred by refusing to charge the jury on sudden passion. We review claims of jury-charge error under the two-pronged test set out in *Almanza v. State*. 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g); *Swearingen v. State*, 270 S.W.3d 804, 808 (Tex. App.—Austin 2008, pet. ref'd). We first determine whether error exists. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). If error exists, we then evaluate the harm caused by the error. *Id.* The degree of harm required for reversal depends on whether that error was preserved in the trial court. *Swearingen*, 270 S.W.3d at 808. When error is preserved in the trial court by timely objection, the record must show only "some harm." *Almanza*, 686 S.W.2d at 171. By contrast, unobjected-to charge error requires reversal only if it resulted in "egregious harm." *Neal v. State*, 256 S.W.3d 264, 278 (Tex. Crim. App. 2008).

During the punishment phase of a murder trial, a defendant may argue that he caused the death while under the immediate influence of a sudden passion arising from an adequate cause. Tex. Penal Code § 19.02(d). "Sudden passion" means passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation. Tex. Penal Code § 19.02(a)(2). "Adequate cause" is a cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection. Tex. Penal Code § 19.02(a)(1). So, before a defendant is entitled to a sudden-passion instruction, he must prove adequate cause for his passion. *See McKinney v. State*, 179 S.W.3d 565, 569 (Tex. Crim. App. 2005).

Self-defense and sudden passion are intricately intertwined, and except in rare instances, facts that give rise to a self-defense issue also give rise to a sudden-passion issue. *Chavez v. State*, 6 S.W.3d 56, 65 (Tex. App.—San Antonio 1999, pet. ref'd) (cited by *Trevino v. State*, 100 S.W.3d 232, 242 n.40 (Tex. Crim. App. 2003)). The reverse is also true: Except for rare instances, evidence sufficient to overcome a self-defense issue is sufficient to disprove sudden passion. *Id.* Because self-defense and sudden passion so often arise from the same facts, trial courts are "generally well advised to give both instructions." *Benavides v. State*, 992 S.W.2d 511, 525 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd). A trial court is obligated to instruct the jury on sudden passion only when the evidence supports such a finding. *Benavides*, 992 S.W.2d at 524–25 (citing *Lewis v. State*, 231 S.W. 113, 115 (Tex. Crim. App. 1921). It takes very little evidence to reach this threshold: As long as the record contains *some* evidence to support a sudden-passion charge—even if that evidence is weak, impeached, contradicted, or unbelievable—the jury should receive a sudden-passion instruction. *McKinney*, 179 S.W.3d at 569. However, the evidence cannot be so weak, contested, or incredible that it could not support such a finding by a rational jury. *Id.*

The thrust of Wooten's case is his claim that he acted in self-defense. But there was also at least some evidence that he acted out of sudden passion. Wooten testified that he felt threatened by Johnson's insulting words, directed at him and Cleveland while in their own front yard, even before either man reached for a gun. The Court of Criminal Appeals has held that a "jury's rejection of self-defense at guilt-innocence does not necessarily mean that, given an instruction on sudden passion at punishment, it would have rejected that theory as well." *Trevino*, 100 S.W.3d at 242–43. Accordingly, we hold the trial court should have instructed the jury on sudden passion at the punishment phase. *See id.*

If the jury had determined that Wooten acted out of sudden passion, the offense would have been reduced to a felony of the second degree, which carries a maximum sentence of 20 years. *See* Tex. Penal Code § 19.02(d). As Wooten received a 60-year sentence without the sudden-passion instruction, the error in failing to instruct the jury was harmful. The correct remedy in such a situation is to reverse the trial court's judgment as to punishment and remand the case for a new punishment hearing. *See, e.g., Trevino*, 100 S.W.3d at 343. That is the course we take.

\* \* \*

For the foregoing reasons, we affirm appellant's conviction, reverse the trial court's judgment as to punishment, and remand for a new punishment hearing in accordance with this opinion.

/s/     Jeffrey V. Brown
          Justice

Panel consists of Justices Frost, Brown, and Christopher.
Publish — TEX. R. APP. P. 47.2(b).

7