# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00440-CR

**Brian Lee Russell, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 427TH JUDICIAL DISTRICT
### NO. D-1-DC-10-301971, HONORABLE JIM CORONADO, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant Brian Lee Russell guilty of murder. *See* Tex. Penal Code § 19.02. The jury assessed punishment at forty years' imprisonment. In eight appellate issues, Russell asserts that the trial court erred in (1) limiting Russell's cross-examination of a witness about the witness's pending felony charge, (2) failing to properly instruct the jury in several respects, and (3) denying Russell's motion for new trial. We affirm the judgment of the trial court.

## BACKGROUND

This case involves a deadly shooting at an apartment complex in Austin, Texas. Franklin Espinales, the victim in this case, was attending a child's birthday party in the complex's courtyard when Russell approached. Russell was not part of the gathering, and he later testified that he went to the complex to meet a prostitute. According to witnesses, several of the party's guests, including Espinales and Raul Castaneda, spoke to Russell when he arrived. Unfortunately, the

majority of guests could not speak English, and Russell could not speak Spanish. Castaneda's wife—who assisted Castaneda in managing the apartments and was the only bilingual person at the event—tried to assist Russell. Castaneda's wife stated that Russell was hostile and told her that she could not help him. Castaneda threatened to call the police, to which Russell allegedly replied "call the police because you're going to need them."

Castaneda, his wife, and Espinales told Russell to leave. According to Russell, several guests began yelling at him in Spanish. A tenant on the second-floor balcony poured a beer on Russell's head and threatened to throw the bottle at him. At this point, Espinales and his brother Edwin[1] pushed Russell back several feet.[2] Russell drew a handgun, pointed it at various people in the crowd, shot Espinales in the face, and then fled the scene. Espinales died from his injuries.

Russell was subsequently arrested and indicted for Espinales's murder. At trial, several witnesses—including Castaneda, his wife, Edwin, and other tenants—testified for the State. Four of these witnesses testified that Espinales and the other party guests did not threaten or provoke Russell, and an additional two witnesses testified that Russell was upset and aggressive. However, Russell testified that the guests were behaving in a threatening manner and that Russell shot Espinales because Espinales lunged toward him with a bottle. The jury found appellant guilty of murder as alleged in the indictment. Following a punishment hearing, the jury assessed punishment at forty years' imprisonment. This appeal followed.

---

[1] To avoid confusion, we refer to Edwin Espinales by his first name.

[2] Some witnesses testified that Espinales and Edwin pushed Russell to move him out of the way from the beer which was being poured from the second-floor balcony.

2

**DISCUSSION**

Russell raises eight issues on appeal, which we group into the following three complaints. First, Russell argues that the trial court impermissibly limited his cross-examination of Castaneda concerning Castaneda's pending felony charge. Second, Russell asserts that the trial court failed to adequately instruct the jury in several respects. Finally, Russell claims that the trial court erred in denying his motion for new trial based on an ineffective-assistance-of-counsel claim. We address each complaint separately.

**Cross-examination about pending felony charges**

In his first issue on appeal, Russell asserts that the trial court erred in limiting his cross-examination of Castaneda concerning Castaneda's pending felony charge for attempted sexual assault of a child. Specifically, Russell asserts that defense counsel should have been permitted to ask Castaneda about when Castaneda learned that there was an arrest warrant for this charge because it may have explained why Castaneda's testimony about the shooting did not match his previous statements to Russell's private investigator.[3] The State contends that Russell failed to preserve this complaint for review.

To preserve a complaint for appeal, a party must make a timely request, objection, or motion to the trial court and obtain an adverse ruling. Tex. R. App. P. 33.1; *see also Martinez v.*

---

[3] At trial, Castaneda testified unequivocally that Russell was the initial aggressor and that no one gave Russell cause to be afraid. However, Russell's private investigator testified that Castaneda previously told the investigator that Russell may have been afraid that he would be assaulted. According to Russell, the jury could have believed that the pending arrest warrant made Castaneda biased in favor of the State, and therefore the timing of when Castaneda learned about the arrest warrant could have bolstered the private investigator's assertion that Castaneda changed his narrative concerning the shooting to support the State's theory of the case.

3

*State*, 17 S.W.3d 677, 686 (Tex. Crim. App. 2000) (concluding that defendant failed to preserve error when trial court deferred ruling on objection to defendant's question but defendant never asked question again or obtained ruling). Under this standard, a party seeking to introduce evidence must (1) attempt to introduce the evidence; (2) if an objection is lodged, specify the purpose for which the evidence is offered and the reasons the evidence is admissible; (3) obtain a ruling; and (4) if the judge rules the evidence is inadmissible, make a record, through a bill of exceptions, of the precise evidence the party desires admitted. *See* Tex. R. App. P. 33.1; *Melendez v. Exxon Corp.*, 998 S.W.2d 266, 274 (Tex. App.—Houston [14th Dist.] 1999, no pet.).

During cross-examination, defense counsel asked Castaneda if he knew that there was a warrant out for his arrest when he spoke with Russell's private investigator. The State immediately objected and—outside the presence of the jury—asserted that questions about the warrant impermissibly related to a specific instance of bad conduct that could not be used to impeach Castaneda's credibility. *See* Tex. R. Evid. 608(b). Before the trial court ruled on this objection, the following exchange occurred between defense counsel, the prosecutor, and the trial court:

> [Defense]: I only have one more question.
>
> [Court]: But the Court has already ruled regarding the warrant question.[4]
>
> [Defense]: My last question is does [Castaneda] know how many years he can get for the charge he is facing.

---

[4] During a separate portion of her cross-examination, defense counsel asked Castaneda if he knew that there was a warrant for his arrest. The State objected to the question on the basis that the warrant was improper impeachment evidence, and the trial court sustained the objection. *See* Tex. R. Evid. 608(b).

. . . .

[Defense]: Let's think this through. The reason it's relevant he has a charge is if he is looking at a long prison sentence, he has a motive to testify favorably for the defense [sic]. So I think the number of years you can be sent down the river for is rather highly relevant in terms of his motive to fabricate, his motive to shade his testimony.

[State]: That is different from asking about his warrant. If you want to say—

[Defense]: You're totally right. The last question is: Do you know how many years you can get if you are convicted of the felony offense for which you are currently charged? That's my question.

. . . .

[State]: Okay. That's fine.

The proceedings then returned to open court, and the trial court asked the State if it wished to withdraw its objection. The State replied that it would withdraw its objection if defense counsel withdrew her question about when Castaneda learned that there was a warrant for his arrest. Defense counsel agreed to withdraw her question about the warrant and proceeded to ask Castaneda about the potential punishment for his pending felony charge. The issue of when Castaneda learned about the warrant was not raised again.

The trial court never ruled on the State's objection to defense counsel's question concerning when Castaneda learned about the warrant. Nevertheless, Russell asserts that the trial court made an adverse ruling when it referenced its previous ruling precluding questions about Castaneda's warrant. *See supra* n.4. The trial court did not say that it was sustaining the State's objection, and defense counsel never attempted to explain why she should be allowed to question

5

Castaneda about the timing of the arrest warrant. Rather, as soon the State lodged its objection, defense counsel changed her question to the potential punishment that Castaneda faced and withdrew her question concerning when Castaneda learned about the warrant.

Therefore, Russell has failed to preserve this issue for review because defense counsel did not obtain an adverse ruling from the trial court on her question concerning when Castaneda learned about the arrest warrant. *See Martinez*, 17 S.W.3d at 686. We overrule Russell's first appellate issue.

**Jury-charge complaints**

In his second, third, fourth, seventh, and eighth issues on appeal, Russell raises three complaints about the jury charge. First, Russell argues that the trial court erred in failing to instruct the jury on the law of sudden passion. *See* Tex. Penal Code § 19.02(d) (reducing classification of murder to second-degree felony if committed "under the immediate influence of sudden passion"). Second, Russell contends that the trial court's instruction on the law of retreat was misleading. *See id.* § 9.31(e) (explaining when party claiming self-defense has no duty to retreat). Third, Russell argues that the trial court erred in failing to instruct the jury that Edwin's prior inconsistent statements could be considered as both impeachment evidence and as an excited utterance. *See* Tex. R. Evid. 803(2) (providing that excited utterances are exception to hearsay rule).

Our review of an alleged error in a jury charge involves a two-step inquiry. First, we determine whether there was in fact error in the jury charge. *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009) (citing *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005)). Second, assuming that error existed, we determine whether the defendant properly preserved the error at

6

trial. *Id.* at 350 (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985)). If the error was properly preserved, reversal is required if there is "some harm" to the defendant. *Almanza*, 686 S.W.2d at 171. However, if the error was not properly preserved, the error must be "fundamental," meaning that it was "so egregious and created such harm that the defendant 'has not had a fair and impartial trial.'" *Barrios*, 283 S.W.3d at 350 (quoting *Almanza*, 686 S.W.2d at 171). With these standards in mind, we turn to the alleged jury-charge errors in this case.

*Sudden-passion instruction*

In his second, third, and fourth issues on appeal, Russell asserts that the trial court erred in failing to instruct the jury on the law of sudden passion at the punishment phase of trial.[5] Specifically, Russell claims that the jury could have reasonably concluded that when he shot Espinales, Russell was incapable of cool reflection because he was afraid of being assaulted by Espinales and the other party guests. *See* Tex. Penal Code § 19.02(a)(1) (defining "adequate cause" to create sudden passion); *see also McKinney v. State*, 179 S.W.3d 565, 569–70 (Tex. Crim. App. 2005) (describing when defendant is entitled to sudden-passion instruction). Therefore, according to Russell, the record supports a sudden-passion instruction that could have resulted in the jury convicting him only of a second-degree felony. *See McKinney*, 179 S.W.3d at 569 (noting that sudden-passion is mitigating circumstance that reduces punishment classification of murder).

_____

[5] Russell also asserts that the trial court should have instructed the jury on the "lesser-included offense" of voluntary manslaughter. Voluntary manslaughter is no longer a separate offense in the Penal Code, having been replaced with the sudden-passion mitigation defense in section 19.02(d). *See Moore v. State*, 969 S.W.2d 4, 8 n.1 (Tex. Crim. App. 1998) (discussing legislature's repeal of voluntary manslaughter statute). Therefore, to the extent Russell separately argues that the trial court should have instructed the jury on the non-existent offense of voluntary manslaughter, we conclude that such an argument is without merit. *See id.*

7

Russell concedes that he did not request a sudden-passion instruction at trial. This Court recently concluded that a trial court does not commit error by failing to give an unrequested sudden-passion instruction. *See Teague v. State*, No. 03-10-00434-CR, 2012 WL 512661, at *6–7 (Tex. App.—Austin Feb. 16, 2012, pet. ref'd) (mem. op., not designated for publication) (citing *Swaim v. State*, 306 S.W.3d 323, 325 (Tex. App.—Fort Worth 2009, pet. ref'd)). As we noted, sudden passion is a defensive issue that is not "law of the case," and therefore must be brought to the court's attention. Thus, unless the defendant requests a sudden-passion instruction, the trial court is under no obligation to include such an instruction sua sponte. *See id.*

On appeal, Russell does not distinguish the facts of this case from those of *Teague*, nor does he offer any argument as to why the trial court had an obligation to include a sudden-passion instruction on its own volition. We find the reasoning of *Teague* persuasive and adhere to its conclusion that the trial court is under no obligation to give an unrequested sudden-passion jury instruction. *See id.* Given that Russell failed to request a sudden-passion instruction, we conclude that the trial did not err in failing to give such an instruction in this case. Having found no error, we need not conduct a harm analysis.[6] *See id.* We overrule Russell's second, third, and fourth appellate issues.

---

[6] In his third appellate issue, Russell asserts that the trial court erred in denying his motion for new trial on the basis that the court erred in failing to give a sudden-passion instruction. Given that we review a denial of a motion for new trial based on alleged jury-charge error under the same *Almanza* standard, we also overrule Russell's third appellate issue. *See Igo v. State*, 210 S.W.3d 645, 647 (Tex. Crim. App. 2006) (explaining that standard for reviewing jury-charge complaint raised in motion for new trial is same as if raised in direct appeal).

8

*Duty-to-retreat instruction*

In his seventh issue on appeal, Russell asserts that the jury instruction improperly implies that he had an affirmative duty to retreat. According to Russell, the instruction indicated that Russell's failure to retreat meant that he could not be justified in using deadly force to defend himself. Before discussing the particular instruction given in this case, we must examine the state of duty-to-retreat law.

The law regarding the duty to retreat has changed recently. "Before 2007, the deadly-force self-defense statute contained a provision imposing a general duty to retreat." *Morales v. State*, 357 S.W.3d 1, 4–5 (Tex. Crim. App. 2011) (discussing changes in duty-to-retreat law). In 2007, the legislature amended the Penal Code to eliminate the general-duty-to-retreat provision. *See id.* Thus, although "failure to retreat may be considered in determining whether a defendant reasonably believed that his conduct was immediately necessary to defend himself or a third party," courts should no longer instruct juries that there is a duty to retreat. *See id.* at 5 n.11 (concluding trial court erred in instructing jury on general duty to retreat after 2007 amendments). However, the legislature specified that an accused has "no duty to retreat" when (1) the accused has the right to be present at the location where deadly forced is used, (2) the accused has not provoked the person against whom the deadly force is used, and (3) the accused has not engaged in criminal activity at the time the deadly force is used. *See id.* at 5 (citing Tex. Penal Code § 9.32(c)–(d)). When applicable, a trial court should instruct the jury that if it concludes the accused had no duty to retreat, the jury may not consider the accused's failure to retreat in determining whether his use of deadly force was necessary. *See id.*; *see also* Tex. Penal Code § 9.32(d).

9

The jury instruction in this case included the following no-duty-to-retreat instruction:

> A person who has a right to be present at the location where the deadly force is used, who has not provoked the person against whom the deadly force is used, and who is not engaged in criminal activity at the time the deadly force is used, is not required to retreat before using deadly force as described by this section.

Russell objected to this instruction, asserting that it was undisputed that the no-duty-to-retreat statute did not apply in this case because Russell did not have a right to be at the apartment complex after he was told to leave.[7] *See* Tex. Penal Code § 9.32(c).  Furthermore, Russell argues that the jury could improperly interpret this instruction to mean that Russell had an affirmative duty to retreat because he did not have a right to be at the apartment complex.  *Cf. Morales*, 357 S.W.3d at 5.

This same issue was addressed in *Whitney v. State*, 396 S.W.3d 696, 701–03 (Tex. App.—Fort Worth 2013, pet. ref'd).  In *Whitney*, the Fort Worth Court of Appeals noted that "even if an instruction setting out the circumstances under which a person using force . . . has no duty to retreat necessarily implies the existence of" a duty to retreat, a no-duty-to-retreat instruction is nevertheless a correct statement of the law.  *Id.* at 703 (citing Tex. Penal Code § 9.31(e)).  Therefore, the court concluded that the trial court did not err in giving a no-duty-to-retreat instruction because the instruction "track[s] the law as set out by the legislature."  *Id.* (citing *Martinez v. State*, 924 S.W.2d 693, 699 (Tex. Crim. App. 1996); *Riddle v. State*, 888 S.W.2d 1, 8 (Tex. Crim. App. 1994), *cert. denied*, 514 U.S. 1068 (1995)).  We agree with this conclusion.

---

[7] The State argues that this paragraph was intended to ask whether the party guests had the right to stand their ground, not whether Russell had a duty to retreat.  Even assuming that the guests' right to stand their ground was relevant, the instruction does not specify that it is referring to the party guests' conduct rather than Russell's.

In this case, the trial court gave a correct instruction about when a person does not have a duty to retreat, tracking the language of section 9.32(c) of the Penal Code verbatim. "Following the law as it is set out by the Texas Legislature will not be deemed error on the part of a trial judge." *Martinez*, 924 S.W.2d at 699. Therefore, we cannot conclude that the trial court abused its discretion by including the no-duty-to-retreat instruction. We overrule Russell's seventh appellate issue.

*Excited-utterance instruction*

In his eighth issue on appeal, Russell asserts that the trial court erred in refusing to instruct the jury that it could consider Edwin's out-of-court statements for more than just impeachment purposes. Specifically, Russell argues that Edwin's statements to police shortly after the shooting constituted an excited utterance and therefore were admissible for the truth of the matter asserted. *See* Tex. R. Evid. 803(2) (excepting excited utterances from general rule that hearsay statements cannot be considered for truth of matter asserted). Thus, according to Russell, the trial court's instruction that a witness's previous inconsistent statements could only be considered for impeachment purposes was incorrect as it applied to Edwin.

At trial, Edwin testified that he was in his apartment when he heard yelling in the courtyard. Edwin explained that when he went to see what was happening, Russell was already pointing a gun at his brother, Espinales. Edwin stated that he tried to get between Russell and Espinales, but could not reach them before Russell shot Espinales. Russell elicited testimony from a detective assigned to this case, who stated that on the night of the shooting, Edwin told police that Russell initially pointed the gun at him, and that it was Espinales who stepped in front of the gun to

11

protect his brother. According to the detective, Edwin also stated that prior to Russell's arrival, Edwin asked Espinales to stay in the apartment but Espinales "pulled the muscle on me" and insisted on helping clean up the trash at the party. The State did not object to this testimony, nor did it request a limiting instruction to inform the jury that the detective's testimony should only be considered for impeachment purposes.

The jury charge in this case included the following instruction:

> You are instructed that a witness may be impeached by showing he or she has made other and different statements out of court from those testified to in trial. Such impeachment evidence may be considered by you to aid you in determining, if it does, the weight, if any, to be given the testimony of the witnesses at trial and the credibility of the testimony; but such impeachment evidence, if any, is not to be considered for any other purpose.

At the charge conference, Russell objected to the above instruction—asserting that Edwin's out-of-court statements to the detective qualified as an excited utterance that could be considered for the truth of the matter asserted. *See generally Apolinar v. State*, 155 S.W.3d 184, 186–87 (Tex. Crim. App. 2005) (discussing admissibility of excited utterances for truth of matter asserted).

Given that the State did not object to the detective's testimony at trial, the jury could consider his testimony for any purpose, including for the truth of the matters asserted in Edwin's out-of-court statements. *See Poindexter v. State*, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005) (noting that jury may consider "unobjected-to hearsay evidence" for any purpose). Therefore, we will assume without deciding that the trial court erred in giving an instruction indicating that Edwin's out-of-court statements could only be considered for impeachment purposes, and will proceed to determine whether this error was harmful to Russell.

12

Because Russell objected to the court's charge, we consider whether Russell suffered "some harm" from the complained-of instruction. *See Almanza*, 686 S.W.2d at 171. In determining whether there was some harm from an erroneous jury instruction, we consider "(1) the jury charge as a whole, (2) the arguments of counsel, (3) the entirety of the record, and (4) other relevant factors presented by the record." *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013). This is a less stringent standard than the egregious-harm analysis applicable to unpreserved error. *Id.* However, we will not reverse a conviction unless the defendant has "suffered some actual, rather than merely theoretical, harm from the error." *Warner v. State*, 245 S.W.3d 458, 462 (Tex. Crim. App. 2008).

Edwin's alleged statements to police give a different account of where Edwin was immediately before the shooting and suggest that Espinales tried to shield Edwin from Russell's gun, rather than Edwin trying to shield Espinales. But Edwin's out-of-court statements in no way indicate that Espinales threatened Russell or that Russell reasonably feared that the other guests would attack him. Therefore, the inconsistencies between Edwin's prior statements and testimony at trial have little or no relevancy to any fact of consequence in this case. Thus, even if the trial court erred in instructing the jury that it could only consider Edwin's out-of-court statements for impeachment purposes, those statements appear to have no probative value other than impeaching Edwin's credibility.

At most, Edwin's out-of-court statement that Espinales "muscled up" to Edwin earlier in the night could indicate that Espinales was upset and aggressive at some point in the evening. However, four eye-witnesses—including Edwin, Castaneda, and Castaneda's wife—testified that

13

Espinales did not threaten or provoke Russell. Furthermore, a total of six witnesses said that Russell was upset and aggressive before the shooting. Russell was the only witness who testified that Espinales was the aggressor. Given that Russell fled the scene, tried to hide the murder weapon with a friend, and initially lied about being involved in the shooting, there is strong indication in the record that he was not a credible witness. Therefore, even if the jury had believed that Espinales was aggressive toward Edwin earlier in the evening, it is highly unlikely that the jury would have credited Russell's testimony that Espinales threatened him with unlawful deadly force.

Based on the limited probative value of Edwin's out-of-court statements and the overwhelming evidence of guilt, we conclude that Russell was not harmed by the trial court's instruction indicating that Edwin's previous statements could be considered for impeachment purposes only. We overrule Russell's eighth appellate issue.

**Motion for new trial**

In his fifth and sixth issues on appeal, Russell asserts that the trial court erred in failing to rule on his motion for new trial, which was denied by operation of law. *See* Tex. R. App. P. 21.8(c). Specifically, Russell argues that his motion for new trial contained a valid ineffective-assistance-of-counsel claim, in which he complained about his trial counsel's failure to request a sudden-passion instruction. *See supra* pp. 7–8.

We review a trial court's denial of a motion for new trial for an abuse of discretion. *See State. v. Herndon*, 215 S.W.3d 901, 907 (Tex. Crim. App. 2007). "Accordingly, when analyzing the trial court's failure to grant a new trial on the basis of ineffective assistance of counsel, we view the relevant legal standards through the prism of abuse of discretion." *Ramirez v. State*, 301 SW.3d

14

410, 415 (Tex. App.—Austin 2009, no pet.). A trial court abuses its discretion in denying a motion for new trial when no reasonable view of the record could support its ruling. *Id.*

To prevail on an ineffective-assistance-of-counsel claim, Russell was required to satisfy the two-prong test set out in *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986) (adopting *Strickland* standard for claims of ineffective assistance of counsel). Under *Strickland*, a defendant must show that (1) the counsel's performance was deficient and (2) the defendant was prejudiced by the deficient performance. 466 U.S. at 687. Our review of counsel's performance must be highly deferential; we presume that counsel makes all significant decisions in the exercise of reasonable judgment. *Strickland*, 466 U.S. at 689. Counsel's performance is deficient when it falls "below an objective standard of reasonableness" based upon "prevailing professional norms." *Id.*; *see also Perez v. State*, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010).

To demonstrate prejudice in this case, Russell must show there is a reasonable probability that, but for his counsel's deficient performance, the outcome of his trial would have been different. *See Strickland*, 466 U.S. at 694. A reasonable probability is one sufficient to undermine our confidence in the verdict. *Id.* Russell has a duty to bring forth a record that affirmatively demonstrates his counsel's alleged ineffectiveness by a preponderance of the evidence. *See Scheanette v. State*, 144 S.W.3d 503, 509–10 (Tex. Crim. App. 2004).

"[E]xcept in rare instances, facts that give rise to a self-defense issue also give rise to a sudden-passion issue." *See Wooten v. State*, 378 S.W.3d 652, 657 (Tex. App.—Houston [14th Dist.] 2012, pet. granted), *rev'd on other grounds* 400 S.W.3d 601, 606–07 (Tex. Crim. App. 2013).

15

Given that the trial court gave a self-defense instruction during the guilt/innocence phase of trial, Russell may have been entitled to a sudden-passion instruction at punishment. *Id.* Furthermore, his counsel's failure to request such an instruction was arguably not based on strategy.[8] However, we need not decide whether counsel's performance was deficient because Russell has failed to affirmatively demonstrate that he was prejudiced by his counsel's failure to request a sudden-passion instruction. *See Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001) ("[A]n appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong.").

The court of criminal appeals has recognized that "evidence in a case in which a jury rejected a claim of self-defense could demonstrate also that the appellant was not harmed by the failure to receive a sudden passion charge." *Trevino v. State*, 100 S.W.3d 232, 242 (Tex. Crim. App. 2003). When the basis of a self-defense claim is that the victim's conduct reasonably made the defendant afraid that the victim would use deadly force, and the jury rejects that self-defense claim, it is unlikely that the jury would accept that the victim's actions were adequate to produce the degree of fear necessary to make a person of ordinary temperament "lose control." *See Wooten v. State*, 400 S.W.3d 601, 609 (Tex. Crim. App. 2013).

In this case, Russell's self-defense claim rested on his version of the events leading up to the shooting, in which he asserted that Espinales lunged at him with a bottle. The jury rejected this self-defense claim, implicitly finding either that Russell was not credible or that Espinales's actions were not sufficient to make Russell reasonably believe that Espinales would use deadly force.

---

[8] Russell's appellate counsel attached his affidavit to Russell's motion for new trial, in which appellate counsel stated that Russell's trial counsel confided to him that "she did not know she could" request a sudden-passion instruction.

16

Therefore, like the record in *Wooten*, the record in this case strongly suggests that the jury would have rejected a sudden-passion claim for the same reason it rejected Russell's self-defense claim. *See id.*

The trial court could have reasonably concluded that Russell failed to show that he was prejudiced by his counsel's failure to request a sudden-passion instruction.[9] Because we cannot conclude that the trial court abused its discretion in denying Russell's motion for new trial on this basis, we overrule Russell's fifth and sixth appellate issues.

## CONCLUSION

Having overruled Russell's eight issues on appeal, we affirm the trial court's judgment of conviction.

_____

Scott K. Field, Justice

Before Chief Justice Jones, Justices Pemberton and Field

Affirmed

Filed: April 18, 2014

Do Not Publish

_____

[9] Russell also asserts that the trial court erred in failing to conduct a hearing on his motion for new trial. Given our conclusion that the trial court could have reasonably determined that Russell was not prejudiced by his counsel's allegedly deficient performance, we also conclude that the trial court did not abuse its discretion in failing to conduct a hearing on the motion for new trial. *See Holden v. State*, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006) (noting that trial court need not conduct hearing if can dispose of motion for new trial on record and affidavits alone).