FILED IN
COURT OF CRIMINAL APPEALS

April 2, 2015

ABEL ACOSTA, CLERK

PD-1076-14
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 3/31/2015 5:05:30 PM
Accepted 4/2/2015 7:56:11 AM
ABEL ACOSTA
CLERK

**PD-1076-14**

## IN THE TEXAS COURT OF CRIMINAL APPEALS

---

# RICARDO BELTRAN
*PETITIONER-APPELLANT*

vs.

# THE STATE OF TEXAS
*RESPONDENT-APPELLEE*

---

ON DISCRETIONARY REVIEW FROM
THE FIFTH COURT OF APPEALS
CAUSE NO. 05-12-01647-CR

APPEAL FROM THE 194TH JUDICIAL DISTRICT COURT
OF DALLAS COUNTY, TEXAS, CAUSE NO. F-1056077-M

---

# PETITIONER'S REPLY BRIEF ON THE MERITS

---

ROBERT N. UDASHEN, P.C.
State Bar No. 20369600
rnu@sualaw.com

BRETT ORDIWAY
State Bar No. 24079086
bordiway@sualaw.com

SORRELS, UDASHEN & ANTON
2311 Cedar Springs, Suite 250
Dallas, Texas 75201
214-468-8100 (office)
214-468-8104 (fax)

*Counsel for Appellant*

# Table of Contents

Index of Authorities ................................................................................ 3

Reply ........................................................................................................ 4

    I.  Beltran's argument ...................................................................... 4

    II.  The State, like the court of appeals, ignores evidence that
    Beltran acted out of sudden passion ................................................... 6

    III. The State's secondary argument is predicated on a bizarre
    misunderstanding of Beltran's argument ........................................ 10

    IV. Conclusion ................................................................................. 12

Certificate of Service ........................................................................... 14

Certificate of Compliance .................................................................... 14

# Index of Authorities

**Cases**

*Beltran v. State*, 05-12-01647-CR, 2014 WL 3587367 (Tex. App.—Dallas 2014) ........................................................................................ 4

*Brunson v. State*, 764 S.W.2d 888, 895 (Tex. App.—Austin 1989, pet. ref'd) ..................................................................................................... 8

*Chavez v. State*, 6 S.W.3d 56, 65 (Tex. App.—San Antonio 1999, pet. ref'd) ..................................................................................................... 5

*Golden v. State*, 851 S.W.2d 291, 295 (Tex. Crim. App. 1993) ............... 10

*Jones v. State*, 687 S.W.2d 425, 430 (Tex. App.—Dallas 1985, pet. ref'd) 9

*McKinney v. State*, 179 S.W.3d 565, 569 (Tex. Crim. App. 2005) ...... 8, 10

*Moore v. State*, 969 S.W.2d 4, 15 (Tex. Crim. App. 1998) ......................... 8

*Thompson v. State*, 02-12-00351-CR, 2013 WL 5303631 (Tex. App.—Fort Worth 2013, pet. ref'd) ................................................................. 5

*Wooten v. State*, 378 S.W.3d 652, 657 (Tex. App.-Houston [14th Dist.] 2012, pet. granted) ................................................................................. 5

## **Reply**

### **I.   Beltran's argument**

It is undisputed that Beltran and Victor Ramos killed the complainant. The only question in this case is whether Beltran murdered the complainant in the course of a robbery, as the State alleged, or whether, as Beltran maintained, he killed the complainant under the immediate influence of sudden passion, or killed him in self-defense. *Beltran v. State*, 05-12-01647-CR, 2014 WL 3587367 (Tex. App.—Dallas 2014).

In Beltran's petition for discretionary review, he urged this Court that, in evaluating whether the trial court erred in denying Beltran's request for a sudden passion instruction, the Dallas Court of Appeals ignored the evidence that Beltran acted out of sudden passion in an effort to point to other evidence that he did not act out of sudden passion. *Id*. That, itself, is directly contrary to this Court's precedent and demands reversal. *See Trevino v. State*, 100 S.W.3d 232, 238-39 (Tex. Crim. App. 2003) ("The problem with the State's argument is that it addresses solely the evidence against sudden passion. While the evidence the State mentions was presented at trial, an appellate court's duty is

to look at the evidence supporting that charge, not on the evidence refuting it."). Even more demanding, though, is that, ironically, that evidence which the blinders-donning Court focused on—that Beltran acted in self-defense—also necessitated reversal. Indeed, self-defense and sudden passion are intricately intertwined, and except in rare instances, facts that give rise to a self-defense issue also give rise to a sudden-passion issue. *Wooten v. State*, 378 S.W.3d 652, 657 (Tex. App.-Houston [14th Dist.] 2012, pet. granted) (citing *Chavez v. State*, 6 S.W.3d 56, 65 (Tex. App.—San Antonio 1999, pet. ref'd), rev'd on other grounds 400 S.W.3d 601, 606–07 (Tex. Crim. App. 2013); *see also Brunson v. State*, 764 S.W.2d 888, 894-95 (Tex. App.—Austin 1989, pet. ref'd) ("It is difficult for this Court to imagine a situation in which the evidence would be sufficient to raise the issue of the use of deadly force in self-defense, and yet would not be sufficient to satisfy the adequate cause prong of the voluntary manslaughter test."); *Thompson v. State*, 02-12-00351-CR, 2013 WL 5303631 (Tex. App.—Fort Worth 2013, pet. ref'd) (an unprovoked, violent attack with a box cutter is sufficient provocation to induce the requisite emotional state in a person of ordinary temperament to justify a sudden-passion instruction); *Moore v. State*, 969 S.W.2d 4,

11 (Tex. Crim. App. 1998) (holding evidence that murder occurred during violent fight, including victim's attempt to run appellant over with a car, sufficient to raise sudden passion). Thus, even if the concepts were wholly distinct, that evidence of both was present in no way precludes an instruction as to sudden passion.

The State's response is somewhat difficult to decipher. As best as Beltran can tell, though, it puts forth two primary arguments. Neither has any merit.

## II. The State, like the court of appeals, ignores evidence that Beltran acted out of sudden passion

At the outset, the State declares that the court of appeals did not even do what Beltran said it did: determined that some evidence Beltran acted in self-defense negated all evidence that he acted in sudden passion. (St. Br. at 7). The State contends that, rather, the court simply determined the evidence showed Beltran acted with thought. (St. Br. at 7, 9-10).

That was indeed the court's conclusion. But repeating it does not address Beltran's argument: that flawed *reasoning* led to that flawed conclusion. And in fact the State never really addresses Beltran's argu-

ment, instead simply arguing that the court's conclusion was right[1]: that "the opinion of the Fifth Court leaves no doubt that the Fifth Court's conclusion that there had been no evidence that Beltran had acted while under the influence of sudden passion was based on the evidence that showed that Beltran had never been rendered incapable of cool reflection, but actually had 'acted with thought.'" (St. Br. at 10).

Over the following three paragraphs, the State then points to all that evidence that it contends shows as much. (St. Br. at 10-11). The very first sentence of that section, though, reveals the flaw in the State's argument—the exact flaw in the court of appeals's analysis of which Beltran complains: "While Beltran claimed more than once that he had panicked, Beltran repeatedly claimed that he had grabbed and held McKnight and that he had told Ramos to seek help." (St. Br. at 10).

---

[1] The State does, at one point, assert it "disagrees with Beltran's contention that evidence of acting in self-defense does not negate evidence of having acted under the influence of sudden passion." (St. Br. at 12-13). But this is misleading, because the State then simply explains that "sudden passion should not submitted if the record is such that no rational jury could have made a finding of sudden passion based thereon." (St. Br. at 13).

Beltran of course agrees that a sudden passion instruction should not be given when there is no evidence of sudden passion. This case concerns the circumstance in which there is evidence of sudden passion *and* self-defense, though.

7

For, the "While" part is all that matters. "A jury should receive a sudden passion charge if it is raised by the evidence, even if that evidence is weak, impeached, *contradicted*, or unbelievable." *McKinney v. State*, 179 S.W.3d 565, 569 (Tex. Crim. App. 2005) (emphasis added). Because, here, Beltran claimed that he panicked, no amount of other evidence the State points to can absolve the court of its duty to instruct the jury on sudden passion. *See, e.g., Brunson*, 764 S.W.2d at 895 (quoting multiple dictionary definitions of "panic" and then holding "the conclusion is inescapable that when appellant testified, 'I panicked,' he was testifying in shorthand form, 'I experienced a sudden terror of such degree that it overwhelmed my mind.'"); *Trevino*, 100 S.W.3d at 239 (considering appellant's demeanor after murder as supportive evidence to justify sudden-passion instruction, and holding that some evidence of sudden passion consisted of the defendant "freaking out," "scared and panicked," "crying and shaking," "pacing," "consistently upset and crying," "sounded distressed," and "looked past" the investigator); *Moore*, 969 S.W.2d at 15 (Keller, J., concurring and dissenting) ("sudden passion can also be inferred from the conduct and appearance of the defendant. Some examples could be: running, striking inanimate objects

8

without any apparent rational purpose, shouting, screaming, crying, and facial expressions."); *see also Jones v. State*, 687 S.W.2d 425, 430 (Tex. App.—Dallas 1985, pet. ref'd) (Stephens, J., dissenting) ("Magic words, such as 'sudden passion' are unnecessary, so long as the circumstances give rise to the inference that the defendant acted under 'sudden passion.'").

The State urges this Court otherwise by pointing to "the context of whether a lesser included offense instruction should have been submitted" and urging that Beltran's testimony was not credible and thus did not support a sudden-passion instruction.[2] (St. Br. at 13-16). Specifically, the State points to his behavior *after* the complainant's death—Beltran's lies to the police, and his attempts to cover-up his involvement—as rendering Beltran's testimony that he panicked unbelievable. (St. Br. at 13-16). In so doing, the State brazenly ignores this Court's very clear instruction otherwise (and as cited in Beltran's brief). Again, "[a] jury should receive a sudden passion charge if it is raised by the ev-

---

[2] Sandwiched in between the State's list of evidence supporting that Beltran acted rationally and its assertion that this Court should ignore evidence he did not are some three pages arguing that if there is no evidence of sudden passion, such an instruction is not warranted. (St. Br. at 11-13). Beltran of course agrees with this obvious truth, too.

idence, even if that evidence is weak, impeached, contradicted, or unbelievable." *McKinney*, 179 S.W.3d at 569. "[W]hen evidence from any source raises a defensive issue, and the defendant properly requests a jury charge on that issue, the trial court must submit the issue to the jury." *Trevino*, 100 S.W.3d at 237. "[I]t is well-settled that a defendant's testimony alone is sufficient to raise a defensive issue requiring an instruction in the jury charge." *Golden v. State*, 851 S.W.2d 291, 295 (Tex. Crim. App. 1993).

The State, like the court of appeals, ignores ample evidence in this case that Beltran acted out of sudden passion in favor of evidence indicating he also acted in self-defense. Beltran urges this Court to recognize as much.

## III. The State's secondary argument is predicated on a bizarre misunderstanding of Beltran's argument

The State's secondary argument fares no better—that, in addition to the "legal principles discussed so far herein":

> …the judgment of the Fifth Court should be affirmed because—on the record presented herein—a conclusion that Beltran was entitled to sudden passion would amount to a conclusion that the sudden passion that might (under the proper set of facts) pertain to the person who had merely held the victim could somehow be attributed to the person who had actually inflicted the killing blows (even though

that person had not been subjected to the acts from which the sudden passion might have arisen).

(St. Br. at 19). Beltran doesn't really understand this sentence. Fortunately, the argument can be dispensed of without understanding it, as the State explicitly arrives at its conclusion by misunderstanding the premise. In summarizing Beltran's argument, the State states:

> Had Beltran claimed that he had grabbed McKnight and had then continued to restrain McKnight even while Ramos was stabbing McKnight because Beltran himself had been so enraged and terrified by McKnight's conduct in sexually assaulting Beltran and then trying to smother Beltran, then perhaps, Beltran's testimony would have been sufficient for a rational jury to have found sudden passion therefrom. However, Beltran never asserted that his act of holding McKnight had been something that Beltran had done as a result of having had his capacity to engage in cool reflection overcome by his fear, terror, or rage.

(St. Br. at 16-17). But that is exactly what Beltran argued. He was charged with capital murder, either individually or as a party. (CR1: 9-10). He testified at trial that he was indeed a party to the complainant's death, having restrained him while Ramos stabbed him, but that he acted out of panic. (RR7: 104-112). How the State concludes Beltran contended otherwise is entirely a mystery.

Beltran was not, then, "in a very real sense arguing in effect for recognition in the law that the concept of sudden passion should have

11

some type of component whereby the basis for the alleged sudden passion may be either transferred to another or exercised vicariously." (St. Br. at 16-17). Nor was he "claiming that Ramos could stab McKnight based on what McKnight had done to Beltran and that Beltran should receive the sudden passion instruction even though the record contains no evidence that anything was done to Ramos that would have caused Ramos to act in sudden passion or that would have justified Ramos' having acted while under the influence of sudden passion." (St. Br. 17-18). He was arguing just what the State concedes that, if he so argued, "perhaps, Beltran's testimony would have been sufficient for a rational jury to have found sudden passion therefrom."

## IV. Conclusion

Neither of the State's arguments at all rebuts what he has repeatedly urged: that some evidence that he acted in self-defense does not negate all evidence that he acted in sudden passion. And here, there was plainly evidence that he acted in sudden passion. Accordingly, Beltran again respectfully requests this Court to reverse the judgment of the Dallas Court of Appeals and remand this case to that court for an analysis of whether Beltran was harmed by the trial court's error.

Respectfully submitted,


<u>   /s/ Robert N. Udashen   </u>
ROBERT N. UDASHEN, P.C.
Bar Card No. 01274700
rnu@sualaw.com


<u>   /s/ Brett Ordiway   </u>
BRETT ORDIWAY
Bar Card No. 24079086
bordiway@sualaw.com

SORRELS, UDASHEN & ANTON
2311 Cedar Springs Road
Suite 250
Dallas, Texas 75201
(214)-468-8100 (office)
(214)-468-8104 (fax)

*Attorneys for Appellant*

13

## Certificate of Service

I, the undersigned, hereby certify that a true and correct copy of the foregoing Petitioner's Reply Brief on the Merits was electronically served to the Dallas County District Attorney's Office and the State Prosecuting Attorney on March 31, 2015.

/s/ Robert N. Udashen
ROBERT N. UDASHEN, P.C.

## Certificate of Compliance

Pursuant to TEX. R. APP. P. 9.4(i)(3), undersigned counsel certifies that this brief complies with:

1. the type-volume limitation of TEX. R. APP. P. 9.4(i)(2)(C) because this petition contains 2,117 words, excluding the parts of the brief exempted by TEX. R. APP. P. 9.4(i)(1).

2. the typeface requirements of TEX. R. APP. P. 9.4(e) and the type style requirements of TEX. R. APP. P. 9.4(e) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2011 in 14-point Century Schoolbook.

/s/ Robert N. Udashen
ROBERT N. UDASHEN, P.C.

14