WR-63,871-03
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 8/28/2015 1:29:58 PM
Accepted 8/28/2015 3:52:42 PM
ABEL ACOSTA
CLERK

# IN THE COURT OF CRIMINAL APPEALS
## FOR THE STATE OF TEXAS
### AUSTIN, TEXAS

| | | |
|---|---|---|
| EX PARTE | § | |
| | § | |
| | § | NO. WR-63,871-03 |
| | § | |
| TIMOTHY RANDAL THOMPSON | § | |

**WRIT NO. C-2-010289-0764908-B**
**TRIAL COURT NO. 0764908D**

| | | |
|---|---|---|
| EX PARTE | § | IN THE CRIMINAL DISTRICT |
| | § | |
| | § | COURT NUMBER TWO |
| | § | |
| TIMOTHY RANDAL THOMPSON | § | TARRANT COUNTY, TEXAS |

## OBJECTIONS TO TRIAL COURT'S ORDER ADOPTING STATE'S AMENDED PROPOSED MEMORANDUM, FINDINGS OF FACT AND CONCLUSIONS OF LAW

**NOW COMES** TIMOTHY RANDAL THOMPSON, Applicant, and files these

Objections to Trial Court's Order Adopting State's Amended Proposed Memorandum,

Findings of Fact and Conclusions of Law and would show these Courts the following:

Applicant's Objections to Trial Court's Order Adopting State's Amended Proposed Memorandum, Findings of Fact and Conclusions of Law - Page 1

# I.

## Trial Court's Order

On August 13, 2015, the trial court signed an Order Adopting State's Amended Proposed Memorandum, Findings of Fact and Conclusions of Law. The undersigned counsel did not receive notice of the signing of this order from the trial court. Undersigned counsel learned of the signing of this order on August 20, 2015, upon receipt of an email from the Court of Criminal Appeals advising undersigned counsel of the receipt of Applicant's writ application.

# II.

## Issues in Writ Application

In his writ application, Thompson alleged that his trial attorneys provided ineffective assistance of counsel at Thompson's murder trial in that the trial attorneys failed to:

1.     Request a charge on "sudden passion" at the punishment phase of Thompson's trial;

2.     Adequately investigate the alleged crime scene and develop evidence that Thompson fired a number of warning shots, which would have corroborated Thompson's testimony and contradicted the testimony of the state's crime scene investigator;

3.     Properly object to the exclusion of testimony concerning the deceased's violent

nature or make an offer of proof concerning the excluded testimony.

In addition, Thompson alleged that his appellate attorney provided ineffective assistance of counsel on appeal in that counsel failed to properly argue the issue of the trial court's exclusion of testimony concerning the deceased's violent nature.

## III.

## Laches

The state's proposed findings assert, in part, that Applicant's claims should be barred by laches because Applicant has not acted with reasonable diligence in pursuing his claims and because Applicant's trial attorneys now have diminished memories regarding Thompson's case. (*See, e.g.* proposed findings, p. 14, paragraphs 67 and 68 and p. 18, paragraph 26). Thompson, however, did act with reasonable diligence in pursuing his rights. He filed two pro se writ applications following the affirmance of his conviction on direct appeal. (*See,* Court of Criminal Appeals cause numbers WR-63,871-01 and WR-63,871-02). Those applications were dismissed and the merits of those applications were never reached by this Court. Applicant then raised funds to hire counsel to assist him. That took some time. The point is that Applicant has diligently pursued relief from his unfair conviction. The door to this Court should not be shut in his face. Moreover, there is no prejudice to the State from the supposedly faulty memories of trial counsel. The record is perfectly clear that trial counsel were ineffective in representing Thompson. There is nothing that trial counsel could say,

even with perfect memories, to change that.

## IV.

## Sudden Passion

The trial record contains abundant evidence of sudden passion. Yet, no instruction on sudden passion was requested by Thompson's attorneys. The fact that attorney Johns did not recall at the writ hearing why he did not request a charge on sudden passion is of no moment.[1] Attorney Haley recalled that he (rightfully) urged attorney Johns to request such a charge. (Evid. Hrg., pp. 14, 17, 23, 42, 43). More importantly, because the trial record provides the basis for such an instruction, such an instruction should have been requested. There is no reasonable trial strategy basis that Mr. Johns could have articulated that would justify the failure to request such an instruction. There was no downside to asking for an instruction on sudden passion. A sudden passion instruction would not have been inconsistent with the self-defense argument made at the guilt-innocence phase of the trial. Self-defense and sudden passion are not mutually exclusive concepts. *See, e.g., Wooten v. State*, 378 S.W.3d 652, 657 (Tex. App. – Houston [14th Dist.] 2012, pet. granted) (citing *Chavez v. State*,

---

[1] Mr. Johns testified at the evidentiary hearing that it could have been that he did not ask for an instruction on sudden passion because Thompson testified he was defending himself. (Evid. Hrg., pp. 14-15). Later, Johns testified that he did not ask for such an instruction because he thought he "had a shot just going straight at self-defense." (Evid. Hrg., pp. 21-22). This evidences a fundamental misunderstanding of when a jury would be instructed on self-defense and when a jury would be instructed on sudden passion.

6 S.W.3d 56, 65 (Tex. App. – San Antonio 1999, pet. ref'd) reversed on other grounds, 400 S.W.3d 601 (Tex. Crim. App. 2013) (self-defense and sudden passion are inextricably intertwined, and, except in rare instances, facts that give rise to self-defense also give rise to sudden passion); *also see Brunson v. State*, 764 S.W.2d 888, 894-95 (Tex. App. – Austin 1989, pet. ref'd). Thompson received a 25 year sentence. This sentence is greater than any sentence that would have been possible had the jury found that Thompson acted in the heat of sudden passion. Thompson was clearly prejudiced by his trial attorneys' ineffective assistance of counsel.

## V.

## Ballistics Expert

The state's proposed findings assert that the failure to hire a ballistics expert was a matter of reasonable professional judgment. (*See*, proposed findings, p. 7, paragraph 25). It is, however, difficult to understand this finding. The trial attorneys conducted an incomplete investigation. They were aware of and put on some evidence that Thompson fired warning shots and that there were bullets in the house that the police failed to find, yet they failed to put on the best evidence of this, ballistics evidence. (*See*, Evid. Hrg., p. 13). There is no reasonable trial strategy basis not to adequately investigate a case and then present the best evidence to the jury in support of the defense. A proper investigation would have revealed that Thompson fired warning shots, just as he said, and that the testimony the state presented at trial from a detective concerning

the lack of bullets and bullet holes at the crime scene was erroneous at best and purposefully misleading at worst.[2] (*See* Trial Record, Vol. 4:160-161). In other words, the ballistics evidence that undersigned counsel developed in connection with the writ application would have supported Thompson's defense and undermined the state's case at trial. This evidence would have led to Thompson's acquittal. The failure to present it was the result of professional incompetence that greatly prejudiced Thompson.

## VI.

## Deceased's Violent Character

Thompson's trial attorneys failed to correctly argue to the trial judge the reasons evidence about the deceased's violent character was admissible. Had they made a proper argument to the trial judge, the judge would have allowed them to present evidence to the jury proving that the deceased was the aggressor. This, of course, would have made a difference in the outcome of the trial. The failure of the attorneys to know the law and properly argue it to the Court was clearly ineffective. Thompson was greatly harmed by this failure. If, however, as the state claims in their proposed findings, that Thompson's trial attorneys properly preserved this issue for appellate review, then Thompson's appellate attorney was ineffective for not properly arguing

---

[2] The record developed in connection with this application for a writ of habeas corpus supports a finding that the detective presented perjured testimony about the lack of bullets and bullet holes in the house. Even if the prosecutor was unaware of this perjury, Thompson's due process rights were still violated. Thompson should be granted relief on this basis in addition to his other claims. *See, Ex parte Chabot*, 300 S.W.3d 768 (Tex. Crim. App. 2009).

Applicant's Objections to Trial Court's Order Adopting State's Amended Proposed Memorandum, Findings of Fact and Conclusions of Law - Page 6

this issue to the Court of Appeals. The state cannot have it both ways. If the error was preserved, this was a "dead bang" winner on appeal, had it been properly argued. The failure to do so can be nothing other than ineffective assistance of appellate counsel.

FOR THE ABOVE REASONS, and for the reasons in all of the pleadings filed by Applicant in the trial court, and especially Applicant's proposed findings in the trial court, Applicant Timothy Randal Thompson respectfully requests that the Court of Criminal Appeals reject the state's proposed findings, as adopted by the trial court, and grant Applicant the new trial he deserves.

Respectfully submitted,

_____
ROBERT N. UDASHEN, P.C.
Bar Card Number 20369600

BRUCE ANTON
Bar Card Number 01274700

SORRELS, UDASHEN & ANTON
2311 Cedar Springs Road, Suite 250
Dallas, Texas 75201
(214) 468-8100
(214) 468-8104 fax

Attorneys for Applicant

## CERTIFICATE OF SERVICE

A copy of the attached Objections to Trial Court's Order Adopting State's Amended Proposed Memorandum, Findings of Fact and Conclusions of Law was mailed to the Tarrant County Criminal District Attorney's Office, Appellate Division, 401 West Belknap, Fort Worth, Texas 76196, on August 27, 2015.

_____
ROBERT N. UDASHEN, P.C.
