Ronnie Louis JONES, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–83–00956–CR.

Court of Appeals of Texas, Dallas.

Feb. 11, 1985.

S. Michael McColloch, David W. Coody, Dallas, for appellant.

John Nation, Ann B. Wetherholt, Asst. Dist. Attys., Dallas, for appellee.

Before STEPHENS, WHITHAM and GUILLOT, JJ.

GUILLOT, Justice.

Ronnie Louis Jones appeals a conviction for felony murder. Punishment was assessed at confinement for sixty years in the Texas Department of Corrections. Jones asserts three grounds of error. We overrule all grounds and affirm.

In his first ground of error, Jones contends the trial court erred in not instructing the jury on the lesser included offense of voluntary manslaughter. Jones asserts that the circumstances portrayed in his written statement, given to the police after his arrest, show that the homicide in this case was committed under the influence of sudden passion so as to require a jury instruction on voluntary manslaughter. In his statement to the police, Jones admitted that while burglarizing the deceased's home, he was surprised by the deceased who was armed with a knife. His statement continues:

Jackie [the deceased] swung at me with the knife. I dropped the clock and ran toward the living room door. The door was locked and I could not get out. I turned around and put my hands up and fell back in a chair. I told her to let me go and Jackie said she was going to kill me because I was trying to rip her off. Jackie stabbed me in the left leg with the knife. I said woman you done stuck me, just let me go. Jackie stuck me on the right and left arms with the knife. Jackie then raised the knife up to stab me in the chest. I grabbed her as I came up out of the chair and threw her on the couch. *I took the knife away from her.* I started backing up and Jackie had a hold of my shirt. I was backing toward the kitchen and was going to leave out the kitchen door. *When I got to the kitchen door Jackie reached to open one of the kitchen drawers to get a knife.* I told her to let me go and she stated I am going to kill your ass. Everything got blurry then and I started to stab her because I thought she was going to kill me. I stabbed Jackie two or three times with the knife, I had taken away from her. Jackie let go of my shirt and I ran out the door.

A charge of voluntary manslaughter in a murder prosecution is mandatory only when there is evidence that the defendant acted under the immediate influence of sudden passion arising from an adequate cause. *Hobson v. State,* 644 S.W.2d 473, 477–478 (Tex.Crim.App.1983); *Luck v. State,* 588 S.W.2d 371, 374 (Tex. Crim.App.1979), *cert. denied,* 446 U.S. 944, 100 S.Ct. 2171, 64 L.Ed.2d 799 (1980). Manslaughter is defined by the Texas Penal Code as follows:

(a) A person commits an offense if he causes the death of an individual under circumstances that would constitute murder under Section 19.02 of this code, except that he caused the death under the immediate influence of sudden passion arising from an adequate cause.

(b) "Sudden passion" means passion directly caused by and *arising out of provocation by the individual killed* or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation.

(c) "Adequate cause" means cause that would commonly produce a degree of anger, rage, rensentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection.

TEX.PENAL CODE ANN. § 19.04 (Vernon 1974) (emphasis added).

In the instant case, we find no evidence which would raise the issue that at the time of the offense Jones was acting under the immediate influence of sudden passion arising from an adequate cause. The only evidence with regard to the propriety of a voluntary manslaughter charge is found in Jones' statement to the police. From that statement it is clear that Jones initiated the provocation leading to the deceased using a knife by breaking into her house to steal. The statement reads in pertinent part "... Jackie said she was going to kill me because I was trying to rip her off." Sudden passion must be directly

caused by and arise out of provocation by the *deceased* at the time of the offense. Passion which is solely the result of former provocation will not qualify. *Hobson,* 644 S.W.2d at 478.

■ In the case of *Daniels v. State,* 645 S.W.2d 459 (Tex.Crim.App.1983), a bare claim of fear was found to be insufficient to raise the issue of whether one was acting under the immediate influence of sudden passion arising from an adequate cause. In the instant case, Jones did not make a "bare claim of fear;" Jones never stated he was in any fear. Regardless of this fact, Jones contends that his statement shows "frenzied, provoked actions against a relentless attacker which enraged and frightened him to the point that everything was blurry." Jones' statement shows two things: (1) Jones had the knife; and (2) the drawer that deceased "reached to open" was closed. Jones' statement assumes the deceased was reaching for a kitchen drawer for a knife. The fact that Jones surmised the deceased could reach a knife did not show the requisite fear, only a conscious awareness of danger. Because there is no showing that Jones stabbed the deceased under circumstances which would constitute the offense of voluntary manslaughter, Jones' first ground of error is overruled.

■ In his second ground of error, Jones contends the trial court erred in denying the motion to dismiss his indictment for failure to comply with the Speedy Trial Act. TEX.CODE CRIM.PROC.ANN. art. 32A.02 (Vernon Supp.1984). In the present cause, Jones was indicted for the murder of Jackie Patrick on March 8, 1983. The State filed its announcement of ready on March 21, 1983. The record shows that on March 21, 1983, the trial court made a finding that the State was ready for trial and that the Speedy Trial Act was tolled. On this same date, Jones agreed to pass the case. The case was then set by the court coordinator for April 4, 1983. On April 4th the case was passed, by agreement, to April 15, 1983. Again, the trial court made a finding that the State was ready for trial and that

the Speedy Trial Act was tolled. Because Jones did consent to the continuances between March 21, 1983, and April 15, 1983, this time period falls under the exclusions of Section 4 of the Speedy Trial Act. TEX. CODE CRIM.PROC.ANN. art. 32A.02, § 4 (Vernon Supp.1984). Furthermore, on April 14, 1983, the case was passed to April 18, 1983, and on April 18, 1983, the case was passed to July 11, 1983, although no pass slips appear in the record. In the 194th Judicial District Court, the settings and passings of a case for trial is controlled by the trial court coordinator, not by the prosecutor.

■ The standard for dismissal under Article 32A.02, section 1, "that the State is not ready for trial," refers to the preparedness of the prosecution for trial and does not encompass the trial court and its docket. TEX.CODE CRIM.PROC.ANN. art. 32A.02 (Vernon Supp.1984); *Barfield v. State,* 586 S.W.2d 538, 542 (Tex.Crim.App. 1979). In addition, article 32A.02, section 3, states: "The failure of a defendant to move for discharge under the provisions of this article prior to trial or the entry of a plea of guilty constitutes a waiver of the rights accorded by this article." Once a defendant files a motion to dismiss for failure to adhere to the provisions of the Act, the state must declare its readiness for trial then and at the times required by the Act. This declaration is a prima facie showing of conformity to the Act, but can be rebutted by evidence submitted by the defendant demonstrating that the state was not ready for trial during the Act's time limits. Jones, by asserting that the State could not have been ready to try the case on March 21, 1983, because he was not indicted until June 14, 1983, does not rebut the State's announcement that it was ready to try any cause that arose out of the murder of Patrick. The fact that the state filed an indictment within the prescribed time period and that when it subsequently filed a re-indictment for the same offense, announced that it was ready, and had been ready since March 21, 1983, to try all cases that arose out of that murder created a

presumption of readiness which Jones did not rebut. *Ward v. State*, 659 S.W.2d 643, 647 (Tex.Crim.App.1983); *Barfield*, 586 S.W.2d 538. The time requirements of the Speedy Trial Act were tolled March 21, 1983. Consequently, we overrule Jones' second ground of error.

In his third ground of error, Jones asserts the trial court committed reversible error by excluding the testimony of Police Chief Billy Prince after hearing his testimony outside the presence of the jury, pursuant to the state's motion in limine. Jones argues that Prince was called to show the six officers who testified were biased against Jones.

 Trial courts have considerable discretion as to how and when bias may be proved and as to what collateral evidence is material for that purpose. *Cloud v. State*, 567 S.W.2d 801 (Tex.Crim.App.1978).

> The extent to which a witness may be cross-examined for the purpose of showing bias on a collateral matter rests on the sound discretion of the trial judge. The trial judge must balance the probative value of evidence sought to be introduced against the risk its admission may entail.

*Cloud*, 567 S.W.2d at 802. Such potential risks include the possibility of undue prejudice, embarrassment or harassment either to the witness or to a party, the possibility of misleading or confusing the jury, and the possibility of wasting time. *Cloud*, 567 S.W.2d at 803; *see also Howell v. American Livestock Insurance Company*, 483 F.2d 1354 (5th Cir.1973); *United States v. 412.93 Acres of Land*, 455 F.2d 1242 (3rd Cir.1972). The witnesses' testimony indicates they testified only to what they saw and did at the scene of the crime. Furthermore, it is beyond dispute that the deceased was killed by multiple stab wounds and that Jones admitted his involvement. Prince's testimony does not show any potential for bias on the part of any of the witnesses. In essence, Jones was asking the trial court to allow him to impeach Prince on the basis of speculation as to pressure the two witnesses might have felt to testify favorably for the State. Speculation about a witness' ulterior motives for testifying against the defendant is of little probative value as impeachment. Such speculation invites harassment of the witness, can delay the trial, and can confuse the issues and the jury. *Carrillo v. State*, 591 S.W.2d 876, 887 (Tex.Crim.App. 1979). The trial court's exclusion of Prince's testimony was not an abuse of discretion. Jones' third ground of error is overruled.

The judgment of the trial court is affirmed.

STEPHENS, J., files a dissenting opinion.

STEPHENS, Justice, dissenting.

I respectfully dissent. The majority has determined that appellant's written statement constitutes no evidence that he was acting under the immediate influence of sudden passion arising from an adequate cause when he inflicted stab wounds on the decedent, causing her death. I disagree.

The majority opinion correctly recites the principle that a charge of voluntary manslaughter in a murder prosecution is mandatory only when there is evidence that the defendant acted under the immediate influence of sudden passion arising from an adequate cause.

*Hobson v. State*, 644 S.W.2d 473, 478 (Tex.Crim.App.1983) (*en banc*). However, this principle must be considered together with other principles of law concerning lesser included offenses. In *Hobson*, the Court stated that the question is whether "some" evidence that the defendant was acting under such "immediate influence" is present. *Hobson v. State* at 478.

In reaching its decision as to the propriety of a charge on involuntary manslaughter, the trial court must consider all evidence, and if *any* evidence, whether contradicted or not, raises an issue that a lesser included offense *may* have been committed, the trial judge must include a proper instruction on the lesser included offense.

*Lugo v. State,* 667 S.W.2d 144, 145 (Tex. Crim.App.—1984) (*en banc*). The evidence must be viewed objectively, through the eyes of an ordinary man. *Hobson v. State* at 478. Magic words, such as "sudden passion" are unnecessary, so long as the circumstances give rise to the inference that the defendant acted under "sudden passion."

Several conclusions are reached by the majority in their analysis of appellant's statement, with which I disagree. The majority concludes that "Jones did not even make a bare claim of fear;" that "Jones initiated the provocation leading to the deceased using a weapon by breaking into her house to steal;" and that "the fact that Jones thought the deceased could reach a knife did not show the requisite fear, only a conscious awareness of danger." Judge Clinton, in *Daniels v. State,* 645 S.W.2d 459, (Tex.Crim.App.1983) (*en banc*), stated that "a bare claim of 'fear' does not demonstrate 'sudden passion arising from adequate cause,'" yet, he recognized that "on the other hand 'fear' that rises to the level of 'terror' may constitute sudden passion when its cause is such that would commonly produce a degree of terror 'sufficient to render the mind incapable of cool reflection.'" In *Lugo,* the court adopted the language used in several earlier cases for the proposition that the trial court's judgment of the strength or weakness of the evidence is not controlling. Being the prerogative of the jury to pass upon the probative force of the evidence, the appellant has the right to have a jury and not the court decide the effect of such evidence.

With these guidelines in mind, I conclude that a rational trier of fact could have found that the appellant, upon being caught in the apartment, sought to flee without the intention of harming anyone. When cornered, he fell into a chair and, in an attempt to protect himself, wrestled the knife from his assailant. After gaining possession of the knife, he again retreated, trying to escape, but when he saw the assailant reach for the drawer he thought she was reaching for a knife. He then told her to "let him go," to which she responded, "I am going to kill your ass." It was at this point in time that "Everything got blurry then and I started to stab her because I thought she was going to kill me." Under these circumstances a rational trier of fact, viewing the circumstances with the eyes of an ordinary man, could have well concluded that appellant's fear rose to the level of terror which rendered him incapable of cool reflection, and acting under this immediate state of passion, he inflicted the fatal stab wounds.

I would reverse and remand the cause for the failure to include the lesser included offense of voluntary manslaughter in the charge.