FILED IN
COURT OF CRIMINAL APPEALS

February 25, 2015

ABEL ACOSTA, CLERK

PD-1076-14
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 2/25/2015 2:47:34 PM
Accepted 2/25/2015 2:55:48 PM
ABEL ACOSTA
CLERK

**PD-1076-14**

IN THE TEXAS COURT OF CRIMINAL APPEALS

---

# RICARDO BELTRAN
*PETITIONER-APPELLANT*

vs.

# THE STATE OF TEXAS
*RESPONDENT-APPELLEE*

---

ON DISCRETIONARY REVIEW FROM
THE FIFTH COURT OF APPEALS
CAUSE NO. 05-12-01647-CR

APPEAL FROM THE 194TH JUDICIAL DISTRICT COURT
OF DALLAS COUNTY, TEXAS, CAUSE NO. F-1056077-M

---

# PETITIONER'S BRIEF ON THE MERITS

---

ROBERT N. UDASHEN, P.C.
State Bar No. 20369600
rnu@sualaw.com

BRETT ORDIWAY
State Bar No. 24079086
bordiway@sualaw.com

SORRELS, UDASHEN & ANTON
2311 Cedar Springs, Suite 250
Dallas, Texas 75201
214-468-8100 (office)
214-468-8104 (fax)

*Counsel for Appellant*

## Identity of Parties and Counsel

For Appellant Ricardo Beltran:

    JOHN M. HELMS
        *Trial and direct appeal counsel*
    HELMS, ROBERTS & DIAZ LLP
    6060 N. Central Expressway, Suite 560
    Dallas, Texas 75206

    ROBERT N. UDASHEN
    BRETT ORDIWAY
        *Petition for discretionary review counsel*
    SORRELS, UDASHEN & ANTON
    2311 Cedar Springs Suite 250
    Dallas, Texas 75201

For Appellee the State of Texas:

    STEPHANIE FARGO
    GLEN FITZMARTIN
        *Trial counsel of record*
    DALLAS COUNTY DISTRICT ATTORNEY'S OFFICE
    133 N. Riverfront Blvd., LB 19
    Dallas, Texas 75207

    BRAD CLEMENTS
        *Appellate counsel*
    DALLAS COUNTY DISTRICT ATTORNEY'S OFFICE

Trial judge:

    THE HONORABLE ERNEST WHITE
    THE 194TH JUDICIAL DISTRICT COURT OF DALLAS COUNTY

# Table of Contents

Identity of Parties and Counsel ................................................................. 2

Index of Authorities ................................................................................. 4

Statement of the Case and Procedural History ...................................... 6

Issue Presented ........................................................................................ 8

Statement of Facts ................................................................................... 9

Summary of the Argument ..................................................................... 11

Argument ............................................................................................... 12

    For purposes of determining whether an appellant was entitled to a jury instruction on sudden passion, some evidence that he acted in self-defense does not negate all evidence that he acted in sudden passion. ............................................................................................ 12

        I.  The court of appeals's fatally flawed holding ............................ 12

        II.  Evidence that Beltran acted in self-defense doesn't negate evidence he acted in sudden passion ................................................ 16

        III. Conclusion .............................................................................. 20

Prayer ..................................................................................................... 20

Certificate of Service .............................................................................. 22

Certificate of Compliance ....................................................................... 22

# Index of Authorities

**Cases**

*Beltran v. State*, 05-12-01647-CR, 2014 WL 3587367 (Tex. App.—Dallas 2014) ................................................................................................ passim

*Brunson v. State*, 764 S.W.2d 888, 895 (Tex. App.—Austin 1989, pet. ref'd) .............................................................................................. 14, 18

*Chavez v. State*, 6 S.W.3d 56, 65 (Tex. App.—San Antonio 1999, pet. ref'd) .................................................................................................... 18

*Daniels v. State*, 645 S.W.2d 459, 460 (Tex. Crim. App. 1983) .............. 19

*Golden v. State*, 851 S.W.2d 291, 295 (Tex. Crim. App. 1993) ............... 14

*Hayes v. State*, 728 S.W.2d 804, 807 (Tex. Crim. App. 1987) ................. 14

*Hobson v. State*, 644 S.W.2d 473, 478 n. 10 (Tex. Crim. App. 1983) ..... 13

*Jones v. State*, 687 S.W.2d 425, 430 (Tex. App.—Dallas 1985, pet. ref'd) ................................................................................................. 15, 17

*McKinney v. State*, 179 S.W.3d 565, 569 (Tex. Crim. App. 2005) .......... 13

*Merchant v. State*, 810 S.W.2d 305, 309–10 (Tex. App.—Dallas 1991, pet. ref'd) ........................................................................................... 15

*Milliff v. State*, No. 14-13-00052-CR, 2014 WL 1713897, at *7 (Tex. App.—Houston [14th Dist.] 2014, no pet.) .......................................... 19

*Moore v. State*, 969 S.W.2d 4, 15 (Tex. Crim. App. 1998) (Keller, J., concurring and dissenting) ................................................. 14, 15, 17, 18

*Pierce v. State*, No. 08-12-00150-CR, 2014 WL 1633028, at *5 (Tex. App.—El Paso 2014, pet. ref'd) ........................................................... 19

*Rayme v. State*, 178 S.W.3d 21, 28 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) ................................................................................... 13

*Thompson v. State*, 02-12-00351-CR, 2013 WL 5303631 (Tex. App.—Fort Worth 2013, pet. ref'd) .................................................................. 18

*Villarreal v. State*, ---S.W.3d ---, No. PD-0332-13, 2015 WL 458146, *11 (Tex. Crim. App. Feb. 4, 2015) ........................................................... 18

*Wooten v. State*, 378 S.W.3d 652, 657 (Tex. App.-Houston [14th Dist.] 2012, pet. granted) ............................................................................. 17

*Wooten v. State*, 400 S.W.3d 601, 608–09 (Tex. Crim. App. 2013) ......... 18

**Statutes**

TEX. PEN. CODE § 9.31(a) ........................................................................... 15

TEX. PEN. CODE § 19.02 ................................................................................. 6

TEX. PEN. CODE § 19.02(a)(2) .................................................................. 6, 12

TEX. PEN. CODE § 19.02(d) ......................................................................... 12

TEX. PEN. CODE § 19.03(a)(2) ...................................................................... 6

## Statement of the Case and Procedural History

It is undisputed that Beltran and Victor Ramos killed the complainant. The only question in this case is whether Beltran murdered the complainant in the course of a robbery, as the State alleged, or whether, as Beltran maintained, he killed the complainant under the immediate influence of sudden passion, or killed him in self-defense. *Beltran v. State*, 05-12-01647-CR, 2014 WL 3587367 (Tex. App.—Dallas 2014).

Beltran was charged with the former—capital murder. (CR: 13); *see* TEX. PEN. CODE § 19.03(a)(2). He pleaded not guilty, and the jury indeed rejected the State's contention that Beltran murdered the complainant in the course of robbing him. (CR: 59). Instead, consistent with Beltran's contention that he acted under the immediate influence of sudden passion, the jury found him guilty of the lesser-included offense of murder. *See* TEX. PEN. CODE § 19.02. When it came time to assess to Beltran's punishment, though, the court refused to submit to the jury an instruction on sudden passion. (CR: 54-59); *see* TEX. PEN. CODE § 19.02(a)(2). Left with no guidance, the jury then sentenced Beltran to 70 years' imprisonment. (CR: 59).

Beltran appealed to the Fifth Court of Appeals at Dallas, arguing only that the trial court erred in refusing to submit such an instruction. *Beltran*, 2014 WL 3587367. The Court overruled his complaint and affirmed his conviction on July 22, 2014. *Id.* No motion for rehearing was filed.

## Issue Presented

Whether, for purposes of determining whether an appellant was entitled to a jury instruction on sudden passion, some evidence that he acted in self-defense negates all evidence that he acted in sudden passion.

## Statement of Facts

The sole witness to testify as to the circumstances surrounding the complainant's death was Beltran. He testified that, after a night of heavy drug use, he and Victor Ramos went to the complainant's apartment searching for more. (RR7: 78-82, 91-92). Once there, they snorted "cheese," which, at trial, Beltran explained was heroin mixed with Tylenol PM. (RR7: 66, 93-94). After doing so, the complainant made a "gayish" comment, stroked Beltran's face, and said "Pretty little thing." (RR7: 95). Beltran was uncomfortable and, in Spanish, told Ramos he wished to leave, but Ramos assured Beltran that the complainant was heterosexual (RR7: 95).

He was not. After Beltran and Ramos then ingested more "cheese," and then Xanax, Beltran passed out. (RR7: 98-102). He awoke when he discovered the complainant—who Beltran initially believed to be naked, but was in fact clad in women's lingerie—licking his anus. (RR4: 200-201; RR5: 164; RR7: 102-103).

Beltran screamed and "panicked," in response to which the complainant "jumped on top of [him]." (RR7: 104). The complainant was a large man, standing six feet tall and weighing approximately two hun-

dred eighty pounds, in contrast to Beltran's 160-pound stature. (RR4: 85). Beltran remained "panicking" as the complainant then attempted to smother his breathing with a pillow. (RR7: 105-106). "[S]udden[ly]," then, Ramos appeared and hit the complainant. (RR7: 106). The complainant turned his attention to Ramos, at which point Beltran grabbed him. (RR7: 107). As Beltran attempted to restrain the complainant, Ramos stabbed him to death. (RR7: 107-109). Thereafter, Beltran continue to be "panicking," "totally shocked," "freak[ed] out," and "scared." (RR7: 111-112).

## Summary of the Argument

Beltran "panicked" when he was awoken by the complainant licking his anus. He remained "panicking" as the complainant then attempted to smother his breathing with a pillow. And, upon assisting in the complainant's killing immediately thereafter, Beltran continued to "panic," and be "totally shocked," "freak[ed] out," and "scared."

In determining whether the trial court erred in denying Beltran's request for a sudden passion instruction, though, the Dallas Court of Appeals ignored this evidence in an effort to point to other evidence that he did not act out of sudden passion. That, itself, is directly contrary to this Court's precedent and demands reversal. Even more demanding, though, is that, ironically, that evidence which the blinders-donning Court focused on—that Beltran acted in self-defense—also necessitated reversal. Indeed, self-defense and sudden passion are intricately intertwined, and except in rare instances, facts that give rise to a self-defense issue also give rise to a sudden-passion issue.

## Argument

> For purposes of determining whether an appel-
> lant was entitled to a jury instruction on sudden
> passion, some evidence that he acted in self-
> defense does not negate all evidence that he acted
> in sudden passion.

◆   ◆   ◆

## I.   The court of appeals's fatally flawed holding

On appeal to the Dallas Court of Appeals, Beltran pleaded that, in light of all the evidence, the trial court erred in denying his request for a punishment jury instruction on sudden passion.[1] *Beltran v. State*, 05-12-01647-CR, 2014 WL 3587367, *1 (Tex. App.—Dallas 2014). To justify such an instruction, the record must only minimally support an inference that:

1) the defendant in fact acted under the immediate influence of a passion such as terror, anger, rage, or resentment;

---

[1] A murder committed under the "immediate influence of sudden passion arising from an adequate cause" is a second-degree felony carrying a maximum punishment of twenty years' imprisonment. TEX. PEN. CODE § 19.02(d). Sudden passion is "passion directly caused by and arising out of provocation by the individual killed" which arises at the time of the murder. *Id.* at 19.02(a)(2). Adequate cause is a "cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." *Id.* at 19.02(a)(1). The defendant has the burden of production and persuasion with respect to the issue of sudden passion. *Id.* at 19.02(d).

12

2) his sudden passion was in fact induced by some provocation by the deceased or another acting with him, which provocation would commonly produce such a passion in a person of ordinary temper;

3) he committed the murder before regaining his capacity for cool reflection; and

4) a causal connection existed "between the provocation, passion, and homicide."

*McKinney v. State*, 179 S.W.3d 565, 569 (Tex. Crim. App. 2005). "In other words, sudden passion is 'an excited and agitated mind at the time of the killing caused by an act of the deceased.'" *Rayme v. State*, 178 S.W.3d 21, 28 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (quoting *Hobson v. State*, 644 S.W.2d 473, 478 n. 10 (Tex. Crim. App. 1983)). It does not matter that the evidence supporting the submission of a sudden passion instruction is weak, impeached, contradicted, or unbelievable. *Id.*; *Trevino*, 100 S.W.3d at 238-39. If the evidence raises the issue from any source, during either phase of trial, then the defendant has satisfied his burden of production and, if the defendant requests the instruction, the trial court must submit the issue in the jury charge. *McKinney*, 179 S.W.3d at 569; *Trevino*, 100 S.W.3d at 238–39. And here, Beltran's repeated testimony that he acted while panicked certainly sat-

isfies that minimal standard.[2] *See, e.g., Brunson v. State*, 764 S.W.2d 888, 895 (Tex. App.—Austin 1989, pet. ref'd) (quoting multiple dictionary definitions of "panic" and then holding "the conclusion is inescapable that when appellant testified, 'I panicked,' he was testifying in shorthand form, 'I experienced a sudden terror of such degree that it overwhelmed my mind.'"); *Trevino*, 100 S.W.3d at 239 (considering appellant's demeanor after murder as supportive evidence to justify sudden-passion instruction, and holding that some evidence of sudden passion consisted of the defendant "freaking out," "scared and panicked," "crying and shaking," "pacing," "consistently upset and crying," "sounded distressed," and "looked past" the investigator); *Moore v. State*, 969 S.W.2d 4, 15 (Tex. Crim. App. 1998) (Keller, J., concurring and dissenting) ("sudden passion can also be inferred from the conduct and appearance of the defendant. Some examples could be: running, striking inanimate objects without any apparent rational purpose, shouting, scream-

---

[2] It is immaterial that the evidence came solely from Beltran. *See, e.g., Golden v. State*, 851 S.W.2d 291, 295 (Tex. Crim. App. 1993) ("It is well-settled that a defendant's testimony alone is sufficient to raise a defensive issue requiring an instruction in the jury charge."); *Hayes v. State*, 728 S.W.2d 804, 807 (Tex. Crim. App. 1987). Moreover, one of the State's expert witnesses confirmed that, consistent with Beltran's testimony, the complainant's DNA was found on the inside of Beltran's underwear. (RR7: 55-57).

14

ing, crying, and facial expressions."); *see also Jones v. State*, 687 S.W.2d 425, 430 (Tex. App.—Dallas 1985, pet. ref'd) (Stephens, J., dissenting) ("Magic words, such as 'sudden passion' are unnecessary, so long as the circumstances give rise to the inference that the defendant acted under 'sudden passion.'"). Indeed, the court of appeals repeatedly acknowledged Beltran panicked. *Beltran*, 2014 WL 3587367 at *1-3 ("Beltran screamed in panic and moved"; "'Panicking' and 'shocked,' Beltran asked Ramos if they should call the police"; "[Beltran] said his reaction to finding McKnight assaulting him was to move and scream in panic.").

Yet, the court of appeals held that the evidence did not even "minimally support" an inference that Ramos acted out of sudden passion because the evidence also showed "Beltran was consciously aware of the danger [the complainant] posed" and tried "to protect Ramos and himself" and "to get control of the situation." *Id.* at *3 (citing *Moore*, 969 S.W.2d at 15 (Keller, J., concurring and dissenting) (quoting *Merchant v. State*, 810 S.W.2d 305, 309–10 (Tex. App.—Dallas 1991, pet. ref'd)); *Jones*, 687 S.W.2d at 428). In other words: that Beltran acted in self-defense. *See* TEX. PEN. CODE § 9.31(a) ("a person is justified in using force against another when and to the degree the actor reasonably be-

15

lieves the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force.").

## II. Evidence that Beltran acted in self-defense doesn't negate evidence he acted in sudden passion

This was plainly incorrect. First, even if sudden passion and self-defense were mutually exclusive concepts, this Court in its seminal opinion on the issue of sudden-passion jury instructions forbid that exact parsing analysis:

> The problem with the State's argument is that it addresses solely the evidence against sudden passion. While the evidence the State mentions was presented at trial, an appellate court's duty is to look at the evidence supporting that charge, not on the evidence refuting it.

*Trevino*, 100 S.W.3d at 238-39. Thus, even if the concepts were wholly distinct, that evidence of both was present in no way precludes an instruction as to sudden passion.

And, sure enough, those cases to which the Dallas Court of Appeals cited as support for its contrary holding contained no additional evidence to that which indicated the defendant did not act out of sudden passion. Actually, the *Moore* opinion isn't supportive at all—its a hybrid concurrence/dissent, pointed to only for the undisputed proposition that "[e]vidence of adequate cause does not automatically raise the issue of

16

sudden passion." *Moore*, 969 S.W.2d at 15 (Keller, J., concurring and dissenting). Moreover, as noted above, in that opinion Judge Keller pointed to screaming and crying—as Beltran did—as evidence of sudden passion. *Id*. And *Jones* rejected a claim of sudden passion because it found the defendant initiated the provocation that lead to the killing by burglarizing the victim's home. *Jones*, 687 S.W.2d at 427-28. Only alternatively did it address whether the defendant acted out of sudden passion, and even then it held simply that evidence he was worried the victim was reaching for a knife did not itself constitute evidence of sudden passion. There was no evidence in that case that he panicked. *Id*. at 429.

More significant, though, is that self-defense and sudden passion are *not* mutually exclusive concepts; that Beltran's acted to prevent the complainant from harming him does *not* weigh against sudden passion. Indeed, "[s]elf-defense and sudden passion are intricately intertwined, and except in rare instances, facts that give rise to a self-defense issue also give rise to a sudden-passion issue." *Wooten v. State*, 378 S.W.3d 652, 657 (Tex. App.-Houston [14th Dist.] 2012, pet. granted) (citing *Chavez v. State*, 6 S.W.3d 56, 65 (Tex. App.—San Antonio 1999, pet.

17

ref'd), rev'd on other grounds 400 S.W .3d 601, 606–07 (Tex. Crim. App. 2013); *see also Brunson*, 764 S.W.2d at 894-95 ("It is difficult for this Court to imagine a situation in which the evidence would be sufficient to raise the issue of the use of deadly force in self-defense, and yet would not be sufficient to satisfy the adequate cause prong of the voluntary manslaughter test."); *Thompson v. State*, 02-12-00351-CR, 2013 WL 5303631 (Tex. App.—Fort Worth 2013, pet. ref'd) (an unprovoked, violent attack with a box cutter is sufficient provocation to induce the requisite emotional state in a person of ordinary temperament to justify a sudden-passion instruction); *Moore*, 969 S.W.2d at 11 (holding evidence that murder occurred during violent fight, including victim's attempt to run appellant over with a car, sufficient to raise sudden passion). This Court has repeatedly and recently recognized as much, noting that a jury's treatment of one is informative as to the other. *Villarreal v. State*, ---S.W.3d ---, No. PD-0332-13, 2015 WL 458146, *11 (Tex. Crim. App. Feb. 4, 2015) (citing *Wooten v. State*, 400 S.W.3d 601, 608–09 (Tex. Crim. App. 2013)). Only when capable of cool reflection do facts that give rise to a self-defense instruction not also give rise to a sudden-passion instruction, and again, in this case, Beltran repeatedly testified

18

he was panicked during the entirety of the rapid sequence. *Cf. Daniels v. State*, 645 S.W.2d 459, 460 (Tex. Crim. App. 1983) (no evidence of sudden passion in self-defense case where defendant testified that he was "in full control" and "knew [he] had to do what [he] did."); *Pierce v. State*, No. 08-12-00150-CR, 2014 WL 1633028, at *5 (Tex. App.—El Paso 2014, pet. ref'd) ("There is no evidence, however, that her fear rose to the level of terror such that it rendered her mind incapable of cool reflection at the time she shot Mr. Pierce. To the contrary, Appellant stated that she did not want to shoot him, but she knew if she did not do it, he would kill her. Appellant also had time to retrieve her gun from her purse, go into the bathroom, and wait for Mr. Pierce to walk toward the bathroom."); *Milliff v. State*, No. 14-13-00052-CR, 2014 WL 1713897, at *7 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (appellant not entitled to sudden passion instruction where he "declared his intention was to kill [the complainant] because he pulled a gun on him: 'someone pulls a gun on you, you're going to kill [him].' Appellant's own appraisal of his situation reveals that he had reflected on it, knew what he had to do, and did it."). Far from precluding Beltran's entitlement to a sudden passion instruction, then, that he recognized the danger the complain-

ant posed and tried to suppress it *supports* his right to the instruction. And, in fact, the recognition of the danger posed by the complainant led directly to Beltran's agitated state of mind and caused him to be incapable of reflection.

## III.  Conclusion

There was ample evidence in this case that Beltran acted out of sudden passion. Certainly, there was not "no evidence." *Beltran*, 2014 WL 3587367 at *3. Because the evidence also indicated Beltran acted in self-defense, though, the court of appeals held there was "no evidence" Beltran acted "under the immediate influence of sudden passion," and he was therefore not entitled to a jury instruction on the issue. This was incorrect, for multiple reasons.

### <u>Prayer</u>

Accordingly, Beltran respectfully requests this Court to reverse the judgment of the Dallas Court of Appeals and remand this case to that court for an analysis of whether Beltran was harmed by the trial court's error.

Respectfully submitted,

/s/ Robert N. Udashen

ROBERT N. UDASHEN, P.C.
Bar Card No. 01274700
rnu@sualaw.com


/s/ Brett Ordiway

BRETT ORDIWAY
Bar Card No. 24079086
bordiway@sualaw.com

SORRELS, UDASHEN & ANTON
2311 Cedar Springs Road
Suite 250
Dallas, Texas 75201
(214)-468-8100 (office)
(214)-468-8104 (fax)

*Attorneys for Appellant*

**Certificate of Service**

I, the undersigned, hereby certify that a true and correct copy of the foregoing Appellant's Petition for Discretionary Review was electronically served to the Dallas County District Attorney's Office and the State Prosecuting Attorney on February 25, 2015.

/s/ Robert N. Udashen
ROBERT N. UDASHEN, P.C.

**Certificate of Compliance**

Pursuant to TEX. R. APP. P. 9.4(i)(3), undersigned counsel certifies that this brief complies with:

1. the type-volume limitation of TEX. R. APP. P. 9.4(i)(2)(B) because this petition contains 2,541 words, excluding the parts of the brief exempted by TEX. R. APP. P. 9.4(i)(1).

2. the typeface requirements of TEX. R. APP. P. 9.4(e) and the type style requirements of TEX. R. APP. P. 9.4(e) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2011 in 14-point Century Schoolbook.

/s/ Robert N. Udashen
ROBERT N. UDASHEN, P.C.